UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| **AARON LAMPTON #404701** | **CIVIL ACTION** |
| **versus** | **NO. 06-3060** |
| **BURL CAIN, WARDEN** | **SECTION: "J" (1)** |


## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Aaron Lampton, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On October 29, 2001, he was found guilty of two counts of armed robbery in violation of La.Rev.Stat.Ann. § 14:64.[2] On November 30, 2001, he was found to be a third offender and was sentenced as such on count one to a term of sixty-six years imprisonment; he was also sentenced on count two to a concurrent term of fifty years imprisonment.[3] On December 18, 2002, the Louisiana Fourth Circuit Court of Appeal affirmed his convictions and sentences.[4] Petitioner did not challenge that judgment in the Louisiana Supreme Court.

Petitioner subsequently filed with the state district court an application for post-conviction relief.[5] That application was denied on December 9, 2004.[6] The Louisiana Fourth Circuit Court of Appeal found "no error" in that ruling,[7] and the Louisiana Supreme Court denied the related writ application without assigning reasons.[8]

---

[2] State Rec., Vol. I of II, transcript of October 29, 2001, p. 162; State Rec., Vol. I of II, minute entry dated October 29, 2001.

[3] State Rec., Vol. I of II, transcript of November 30, 2001; State Rec., Vol. I of II, minute entry dated November 30, 2001.

[4] State v. Lampton, No. 2002-KA-0622 (La. App. 4th Cir. Dec. 18, 2002) (unpublished); State Rec., Vol. I of II.

[5] State Rec., Vol. II of II.

[6] State Rec., Vol. II of II, Judgment dated December 9, 2004.

[7] State v. Lampton, No. 2005-K-0530 (La. App. 4th Cir. Apr. 27, 2005) (unpublished); State Rec., Vol. II of II.

[8] State ex rel. Lampton v. State, 925 So.2d 504 (La. 2006) (No. 2005-KH-1628); State Rec., Vol. II of II.

On or about April 17, 2006, petitioner filed this federal application for *habeas corpus* relief.[9]  In support of his application, he raises the following claims:

1. Petitioner's rights were violated when the state used evidence of other crimes; and

2. Petitioner received ineffective assistance of counsel.

The state concedes that, due to deficiencies in the state court record, it cannot be determined conclusively that petitioner's federal application is untimely.  Additionally, the state concedes that petitioner exhausted his state court remedies.  Accordingly, the state elected to address petitioner's claims on the merits.  This Court does likewise.

## Standard of Review

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The United States Supreme Court has noted:

---

[9]  Rec. Doc. 5.

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

### Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeals summarized the facts of this case as follows:

> On 1 April [2001], Sean Harris and Kevin Coffil were outside of Coffil's apartment at 6711 Tara Lane. Harris had recently purchased a motorcycle, and the two men were admiring it when Harris observed two men approach and unveil guns. The taller of the two armed men approached Harris while the shorter subject approached Coffil. Harris unequivocally identified the shorter subject as the defendant. The armed men demanded the victims' possessions and patted their pockets removing money, keys, wallets and cell phones. The taller subject then took the helmet and got on the motorcycle. He relinquished his weapon to the second subject who placed it in his waistband. Before driving off on the motorcycle, he told his accomplice to take the two victims down the street. After

the taller subject had gone on the motorcycle, the other subject had the victims remove their shoes and shake them out so he could be sure there was not any money within. After that, Coffil backed away, and the subject told Harris to walk towards a car parked at the end of the block. He pointed the gun at Harris' side as they walked. When they were about half way to the car, the subject moved ahead, entered the car and left.

The victims ran to Harris' apartment and telephoned the police. The 911 tape was played for the jury.

Harris described the guns used by the perpetrators as a tech-9 and a large semi-automatic pistol, either a nine-millimeter or something larger. He identified state's exhibit 5 as the gun used in the robbery.

Detective Daniel Wharton testified that he was the case detective assigned to the robbery. He arrived on the scene on the night of the robbery and interviewed the two victims. Approximately one month after the robbery, Detective Wharton had developed a suspect in the case, and he compiled a photographic lineup. Wharton testified that both victims positively identified the defendant and then signed the rear of the photograph. The two lineups were introduced into evidence. Wharton obtained a warrant for the defendant's arrest.

Kevin Coffil could not identify the defendant at trial, saying he was not sure. Coffil also explained that at the time he signed the photographic lineup he thought that the defendant was the perpetrator, but he was not sure. He testified for him it was over and done with and that he was not worrying about the armed robbery.

Officer Bryan Lubrano testified that on 29 June 2001, he was conducting a surveillance of the Guste Housing Development when he observed the defendant exit a breezeway and remove a handgun from his waistband. He observed the defendant place the weapon inside the engine compartment of a vehicle and then enter the vehicle. Officer Lubrano notified additional officers, who were able to retrieve the weapon. The defendant was arrested on the outstanding warrant at that time. The weapon, a Colt .45 automatic, was introduced as the state's exhibit number 5.

Detective Wharton was recalled as a witness in the defense case. He testified that the victims described the gun as being a chrome pistol, not a blue steel pistol like the one recovered.

In Lampton's defense, three witnesses testified that they were all with Lampton at an April Fool's Day party on the night of the robbery. Christy Morgan testified that defendant arrived at party [sic] being held at her uncle's house at approximately 5:00 p.m. She

> related that they stayed at the party until approximately 10:00 p.m. when they drove their friend Willie William's [sic] truck to Thibodeaux to visit a club. Morgan was confident that defendant did not leave the party as he and her friends were together throughout the event. Johnell Green testified that defendant had given him a ride to the mall earlier in the day and that he had invited the defendant to the party. He testified that the two arrived at the party together and that defendant did not leave. He described the defendant as a lifelong friend. Green admitted to prior convictions for simple robbery, possession of stolen property and what he referred to as aggravated fighting. Willie Williams arrived at the party at 6:30 or 7:00 that evening. He also went to Thibodeaux with the defendant and the others.[10]

### "Other Crimes" Evidence

Petitioner presents two claims that his rights were violated when the state introduced at trial evidence of other crimes. In the last reasoned state court judgment addressing those claims, the state district court rejected the claims, holding:

> In this application the defendant complains that he was denied a fair trial when the prosecution introduced into evidence a handgun which one of the victims identified as a weapon used during the robbery. Immediately following the armed robbery, the two victims, Sean Harris and Kevin Coffil, apparently described the guns that were used by the two perpetrators as a "Tech-9" and a chrome semi-automatic. At trial, Mr. Harris was presented with a black .45 caliber handgun which he identified as one of the guns brandished by the perpetrators. He testified that he was sure that it was the same gun because he remembered "the white tips across the top of it." (Trial transcript, page 49, lines 29-31.) When he was cross-examined about the gun description that he gave to the police, he said that he
>
>> "told them it was a 9 millimeter or the semiautomatic gun, something like a 9 millimeter – .45. It wasn't anything smaller than that. I've also described the

---

[10] State v. Lampton, No. 2002-KA-0622, at pp. 1-4 (La. App. 4th Cir. Dec. 18, 2002) (unpublished); State Rec., Vol. I of II.

>> other gun as being a 'Tech-9'or 'Uzi-type gun with a very large clip, probably about a .32 magazine,' something like that. Those are the two types of guns that I described."

Mr. Harris conceded under questioning by defense counsel that he never mentioned the white tips across the top to the reporting officers.

To further drive the point home, defense counsel called the reporting officer, Det. Wharton, as a witness to establish exactly what was said by the victims regarding the guns on the night of the incident. Wharton said that the semiautomatic gun was described as chrome colored by Mr. Coffil and, more than likely, by Mr. Harris. Additionally, he went to say that Harris and Coffil were "visibly shaken" during the interview.

The State also called Det. Lubrano to link the black .45 semiautomatic to the defendant. Lubrano testified that he saw Mr. Lampton remove the gun from his waistband and place it under the hood of the car. Moments later, the gun was retrieved and the defendant stopped.

Mr. Lampton's complaints about the gun are twofold. First, he maintains that the State improperly introduced a gun at the trial when it was unrelated to the crime charged. In support of his argument, he relies upon State v. Manieri, 378 So.2d 931 (La. 1979). The distinction is that in Manieri, the weapons introduced into evidence (knives) were not the weapons used in the offense, but only similar. On the contrary, in this case the victim said that the gun in question was the one used to rob him. Whether he was correct or truthful on that point was a question that the jurors had to resolve, and apparently they elected to believe him. Therefore, the State did not violate the defendant's right to a fair trial.

Mr. Lampton's second contention vis-a-vis the gun is that the State elicited other crimes evidence when it had Det. Lubrano testify that he saw Lampton remove the gun from his waistband and place it under the hood of a car. This Court disagrees. There was nothing in Lubrano's testimony that communicated to the jury that this conduct was a crime. The incident was characterized as an "encounter" and no mention was made of an arrest. Consequently, the Court sees no merit to this claim.[11]

---

[11] State Rec., Vol. II of II, Judgment dated December 9, 2004.

As noted, the Louisiana Fourth Circuit Court of Appeal found "no error" in that ruling,[12] and the Louisiana Supreme Court denied the related writ application without assigning reasons.[13]

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is arguing that the state courts merely misapplied state evidence law, his claim is not reviewable in this federal proceeding.

Nevertheless, because it is relevant with the respect to petitioner's related ineffective assistance of counsel claim, this Court notes that the challenged evidence was in fact properly admitted. Although petitioner tries to argue that the evidence constituted improper "other crimes" evidence, it was not. It is true that the state is not allowed to introduce evidence of the accused's unrelated wrongs for the purpose of showing that he is generally of bad character and, therefore, probably also guilty of the crime charged.[14] However, that was not the purpose of the challenged

---

[12] State v. Lampton, No. 2005-K-0530 (La. App. 4th Cir. Apr. 27, 2005) (unpublished); State Rec., Vol. II of II.

[13] State ex rel. Lampton v. State, 925 So.2d 504 (La. 2006) (No. 2005-KH-1628); State Rec., Vol. II of II.

[14] La. Code Evid. art. 404, in pertinent part, provides:

> B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request of the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to

evidence. Rather, Lubrano's testimony and the gun were introduced as direct evidence of *this* crime, i.e. to show that the gun that Harris positively identified as the weapon used to commit the armed robbery in *this* case was later found by Lubrano to be in petitioner's possession. The fact that petitioner's possession of that gun may well have constituted a separate and distinct crime is of no moment, in that the Louisiana Supreme Court has "repeatedly held that highly probative evidence is not be excluded simply because its introduction also relates to another offense." State v. Hollingsworth, 337 So.2d 461, 465 (La. 1976); see also State v. Bell, 315 So.2d 31, 35 (La. 1975) ("When ... relevant and highly probative evidence is necessary to establish the elements of the crime charged, the fact that it involves another crime does not render the evidence objectionable."); State v. Kinchen, 290 So.2d 860, 864 (La. 1974) ("Merely because relevant evidence bearing upon the question at issue also tends to show the commission of other crimes by the accused does not make such evidence inadmissible.").[15]

Moreover, even if the evidence *had been* improperly admitted, that alone would not necessarily warrant *habeas* relief. The United States Fifth Circuit Court of Appeals has noted:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

---

introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

[15] The Court is aware that petitioner argues that Harris incorrectly identified the gun as the one used in the robbery. However, as the state court noted, that was for the jury to decide. "[C]onnexity of the physical evidence is a factual matter for the jury." State v. Addison, 871 So.2d 536, 551 (La. App. 5th Cir.), writ denied, 885 So.2d 584 (La. 2004).

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998) ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").

In the instant case, even if the challenged evidence had been wrongfully admitted into evidence, *which it was not*, it nevertheless cannot be said that the evidence played a crucial, critical, and highly significant role in petitioner's conviction in light of the other evidence against him, including the victim's eyewitness identification of petitioner as the robber. Accordingly, petitioner cannot in any event demonstrate that the admission of the challenged evidence resulted in a denial of fundamental fairness.

Petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court rejects petitioner's evidentiary claims.

### Ineffective Assistance of Counsel

Petitioner claims that he received ineffective assistance of counsel. In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. See id. at 697. If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. Id.

- 10 -

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

In the last reasoned state court judgment addressing the ineffective assistance of counsel claim, the state district court rejected the claim, holding:

> Mr. Lampton maintains that trial counsel was ineffective in failing to object to the testimony of Lubrano or the introduction of the gun. Because, as stated above, this Court is of the opinion that this evidence was properly admitted, any such objection by trial counsel would have been overruled.[16]

The Louisiana Fourth Circuit Court of Appeal found "no error" in that ruling,[17] and the Louisiana Supreme Court denied the related writ application without assigning reasons.[18]

As noted previously in this opinion, the evidence in question was in fact admissible. Therefore, any objection to that evidence would have meritless.  Accordingly, petitioner's ineffective assistance of counsel claim necessarily fails.  "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."  Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

---

[16]  State Rec., Vol. II of II, Judgment dated December 9, 2004.

[17]  State v. Lampton, No. 2005-K-0530 (La. App. 4th Cir. Apr. 27, 2005) (unpublished); State Rec., Vol. II of II.

[18]  State ex rel. Lampton v. State, 925 So.2d 504 (La. 2006) (No. 2005-KH-1628); State Rec., Vol. II of II.

Petitioner has failed to demonstrate that the state court's decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Therefore, applying the AEDPA's deferential standard, this Court likewise rejects that claim.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Aaron Lampton be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-second day of January, 2007.



**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**